# Howard v. Commonwealth.

(Decided April 25, 1930.)

H. C. FAULKNER, W. E. FAULKNER and VERNON FAULKNER for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On the former appeal of this case the judgment was reversed for certain errors in the proceedings. The facts are stated in that opinion. Howard v. Com., 227 Ky. 142, 12 S. W. (2d) 324. On the return of the case to the circuit court it was tried on practically the same evidence, and the defendant again was found guilty of murder, and her punishment was fixed, as before, at life imprisonment. She appeals and relies on the following grounds for reversal:

At the February term, 1929, upon the calling of the case for trial, the defendant made a showing in open court that a fair and impartial jury could not be obtained in Perry county, and the court entered an order directing a jury to be summoned from Lee county for the trial of the case under section 194 of the Criminal Code of Practice. The jury was summoned, but neither party was ready for trial, and the case was by consent continued at that term. On the calling of the case at the June term the defendant filed affidavit and moved the court for a continuance. The court overruled the motion and ordered the sheriff to summon 75 men from the bystanders in Perry from whom, together with the regular panel, to select the jury to try the case. To this ruling of the court the defendant excepted. But the defendant did not then move the court to send to Lee couny for a jury or make any showing that the same conditions existed as at the February term. The parties were in court with a large number of witnesses. It would have taken time to send to another county for a jury, and if the defendant wished this done it was incumbent on her to make a showing and ask it.

The continuance was asked on account of the absence of one witness by whom the defendant would prove that the dress that she produced at the trial was the dress that she had on at the time of the homicide.

The defendant did introduce on the trial five other witnesses who testified that the dress produced at the trial was the dress that she had on at the homicide. There was little contradictory evidence, and if the affidavit for continuance had been allowed to be read it could have had reasonably no effect upon the result of the trial. The court should not have said in overruling the motion that the witness would not swear this. But this was said before the jury was impaneled, and presumably could have had no effect upon the trial.

■ The commonwealth in rebuttal introduced as a witness William Cornell, the officer who arrested the defendant, and proved by him that she said, as he took her to jail, speaking of the deceased, "Maybe I have killed her, but I don't feel I have killed anything more than an ordinary piece of stock." The defendant then asked the witness to state other things that she said, and the court refused to allow the other things she said to be proved; but the other things she said, according to the testimony of the witness, were not said at this time but when the witness first met her. While all that the defendant says at the time may be introduced, statements made at other times and not connected with the statement in question may not be proved. 22 C. J. p. 414 sec. 498; Cornelius v. Com., 15 B. Mon. 547.

■ Ethel Howard, daughter of the defendant, testified that not long before the homicide she heard the deceased say she had a good gun, it killed a negro once, and it would damn sure kill a white person. Her testimony as to what occurred after this between her and her mother, as shown by the record, is in these words:

"Q. Did you tell her what Doshia said? A. Yes, sir, she was telling me about the quarrel and I told her about the threat and asked mother.
"Plaintiff objects.
"By the Court: That is not competent.
"Defendant excepts.
"A. I told her about the threat.
"Q. What Doshia said? A. Yes, sir, what I took to be a threat.
"Q. Did you tell her all of it? A. Yes, sir, just what I have told you."

The natural meaning of this is that the court excluded what the mother said when the witness asked

her; for plainly he did not exclude the subsequent statement of the witness that she told her all that she had stated. There was no substantial error here.

■ Allen Parnell was a witness for the commonwealth proving a part of what occurred at the homicide. The defendant asked him if he did not make certain statements to James Denton immediately after he ran from the homicide. He said he did not remember. The commonwealth then proposed to prove by James Denton that Parnell did make these statements. The court refused to allow the evidence to be admitted, but the statement to Denton was practically the same as the witness stated on cross-examination on the trial. The alleged statement of Denton in no wise conflicted with his statements in court. The defendant was therefore not prejudiced by the ruling of the court. Under section 597 of the Civil Code of Practice, the witness may only be so impeached "by showing he has made statements different from his present testimony."

■ Ethel Stanley, a daughter of Mrs. Howard, testified as a witness for her and was asked if just after the homicide, in response to a question asked her as to what was the matter, she had answered, "Nothing but a damn bitch dying." She denied making this statement. They allowed a witness to be introduced to prove that the witness had made this statement; but it is always competent to prove the bias of the witness, and this statement of the witness was only allowed to go to the jury in so far as it might affect her credibility. The cases where such statements have been held incompetent did not involve this question. "The essential requirement as to the admissibility of such evidence is that it reflects the feelings, prejudices, interests and motives of the witness, and thereby enables the jury to properly estimate the value of his testimony." Sparks v. Com., 193 Ky. 187, 235 S. W. 767, 771. See, also, 1 Greenleaf on Evidence, sec. 450.

■ The defendant introduced the undertaker, who had buried the body of the deceased. After he had testified to certain facts in her favor, she asked him if he had not been summoned by the commonwealth and not sworn. The court refused to allow this to be answered. This was immaterial. There was no effort to impeach the witness or discredit him.

■ In rebuttal the commonwealth was allowed to introduce Clarence Davis and several other witnesses to

contradict specific statements which the defendant had made as to a certain thing that occurred at the homicide and to prove by each that this thing did not occur. There was no substantial error in this, although the witnesses had stated what had occurred, they had not testified that this or that thing did not occur. There was no substantial error here.

■ The record does not disclose any misconduct of the circuit judge or the commonwealth attorney warranting a new trial. The case must be tried here on the record, and this is not sufficient to show ground for reversal for this reason. The circuit judge, twice during the trial, said to the counsel, "Judge Faulkner, I am running the court," and at another time he asked a witness two or three questions. The commonwealth attorney, when the defendant was on the witness stand, asked her to get up before the jury and take hold of him and show before the jury how the homicide occurred, placing him in the position that the deceased occupied. We do not find in the record any objection to the proceeding at the time or any objection that called for any action by the court and it is hard to see how the defendant could have been prejudiced by this. If the attorney did not place himself in the right position or was unfair, she might have asked that another be substituted. This she did not do.

The verdict of the jury is not palpably against the evidence, if the evidence for the state was true. The case turns on the credibility of the witnesses. Two juries have reached the same conclusion on it.

It is expressly provided by section 340 of the Criminal Code of Practice that a judgment of conviction may only be reversed for an error of law appearing on the record "when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

Upon a careful consideration of the record, the court is satisfied that no error of law prejudicial to the substantial rights of the defendant appears in the record, and that the judgment should not be disturbed.

Judgment affirmed.